IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
HAITHAM HAMDAN,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    1:11CV831
                                   )
INTERNATIONAL INC., d/b/a PAPA     )
JOHN'S,                            )
                                   )
            Defendant.             )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge, pursuant to Federal Rule of Civil Procedure 72(a) and (b)(1), for a recommendation on Defendant's Motion for Summary Judgment (Docket Entry 17) and for disposition of Defendant's Amended Motion to Strike Plaintiff's Witness Statements and Other Documents ("Motion to Strike") (Docket Entry 25). (See Docket Entries dated July 26 and Aug. 24, 2012.) For reasons that follow, the Court should enter summary judgment for Defendant, but no need exists to strike the contested materials. An unsigned "Notice of Appearance" purportedly filed by Jennifer Hamdan (Docket Entry 27), however, will be stricken.

Background

Plaintiff's pro se Complaint alleges in relevant part that:

5. Plaintiff's National Origin is Lebanese.

6. Plaintiff was employed by Defendant from July 9, 2001 until his dismissal on March 5, 2010. At the time of his dismissal, Plaintiff was employed as an Assistant Manager, and was performing his job in an acceptable manner and was qualified for the position of Assistant Manager.

> 7. During his employment, his direct supervisor made inappropriate and <u>harassing remarks about Plaintiff's national origin, religion, and color</u>.
>
> 8. <u>Plaintiff complained about the harassing behavior of his supervisor</u>.
>
> 9. Shortly after his complaint, <u>Plaintiff was terminated by Defendant for allegedly using an Arabic curse word during an interview</u>. Plaintiff did not use an Arabic curse word in the interview.
>
> 10. After his termination <u>Plaintiff was replace [sic] by a non-Lebanese Assistant Manager</u>.

(Docket Entry 1 at 1-2 (emphasis added).)[1] Based on these allegations, the Complaint asserts claims that:

1) "Defendant's termination of Plaintiff due to his national origin violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. [('Title VII')]" (id. at 2); and

2) "Defendant's termination of Plaintiff for his protected activity [of complaining about harassment based on national origin, religion, and color] violated Title VII" (id. at 3).

After discovery ended, Defendant[2] moved for summary judgment on Plaintiff's foregoing claims on the grounds that:

> 1. Plaintiff cannot establish a prima facie case of discrimination;
>
> 2. Even if Plaintiff could establish such a prima facie case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason for its actions and Plaintiff has no evidence that such reason is pretextual;

---

[1] Plaintiff initially filed the Complaint in state court and Defendant removed the case to this Court. (See Docket Entry 1.)

[2] In its Answer, Defendant reported that it "is properly identified as Papa John's USA, Inc." (Docket Entry 6 at 1.)

> 3. Plaintiff cannot establish a prima facie case of retaliation; and
>
> 4. Even if Plaintiff could establish such a prima facie case of retaliation, Defendant has articulated a legitimate, non-discriminatory reason for its actions and Plaintiff has no evidence that such reason is pretextual.

(Docket Entry 17 at 1.) To support that motion, Defendant filed:

1) portions of the transcript of Plaintiff's deposition and exhibits from said deposition (Docket Entry 17-1);

2) an affidavit from Kristie Scott, Defendant's "Human Resources Director – Field Operations for the East Coast" and exhibits thereto (Docket Entry 17-2); and

3) an affidavit from Mike Smith, Defendant's "Operations Vice President for the Carolinas" (Docket Entry 17-3).

Plaintiff responded in opposition (Docket Entry 21) and attached thereto 92 pages of exhibits (largely consisting of multiple copies of the same documents) (Docket Entry 21-1). Defendant replied (Docket Entry 22) and moved that the Court strike a number of Plaintiff's exhibits as deficient under Federal Rule of Civil Procedure 56 (Docket Entry 25). Plaintiff filed a response opposing the striking of his exhibits (Docket Entry 31) and Defendant replied (Docket Entry 32). During the briefing period for Defendant's Motion to Strike, an unsigned document titled "Notice of Appearance" was filed that stated: "Jennifer Hamdan, wife of Plaintiff, hereby provides notice to the Court and all parties and their counsel that she will appear along with [Plaintiff] for all purposes herein on behalf of the Plaintiff in this matter." (Docket Entry 27 at 1.) Because said filing did not

-3-

Case 1:11-cv-00831-WO-LPA   Document 37   Filed 09/17/12   Page 3 of 19

identify "Jennifer Hamdan" as an attorney admitted to practice in this Court (see id. at 1-2), the Court will strike it. See generally Myers v. Loudoun Cnty. Pub. Sch., 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his [or her] *own* claims in federal court . . ., however, [that right] does not create a coordinate right to litigate for *others*." (emphasis in original) (citing, inter alia, 28 U.S.C. § 1654)).

Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor." Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).[3]

---

[3] The obligation to construe the record in the non-movant's favor does not require consideration of inadmissible material. See Fed. R. Civ. P. 56(c)(2) and (4) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. . . . An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); see also Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (internal emphasis omitted). Conversely, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

Proving National Origin Discrimination and/or Retaliation

To establish discrimination or retaliation in employment under Title VII, a plaintiff may proceed "in one of two ways. First, he may present direct evidence of his superiors' discriminatory [or retaliatory] intent. Second, he may attempt to satisfy the test specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows him to raise an inference of discriminatory intent by showing that he was treated worse than similarly situated

-5-

employees of other [relevant groups]." Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2003) (internal parallel citation omitted).[4] Plaintiff does not argue that the record contains direct evidence that his firing constituted discrimination based on national origin and/or retaliation for complaining about harassment based on national origin, religion, or color. (See Docket Entry 21.)[5] Accordingly, he must satisfy the McDonnell Douglas test, which first requires proof of a prima facie case. See Coleman v.

---

[4] Although McDonnell Douglas arose in the discrimination context, its framework also applies to retaliation claims. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 n.1 (4th Cir. 2000).

[5] In particular, under the heading "Legal Arguments," Plaintiff does not assert that his claims should survive under a direct evidence theory, but instead offers the following contentions related to the McDonnell Douglas proof scheme:

> A. Plaintiff Can Meet His Burden of Proving Discrimination in Violation of Title VII.
>
> 1. Plaintiff Can Establish a Prima Facie Case of Discrimination.
>
> 2. [Defendant's] Illegitimate Reason for Plaintiff's Termination was Pretextual.
>
> B. Plaintiff Can Meet his Burden of Proving Retaliation in Violation of Title VII.
>
> 1. Plaintiff Can Establish a Prima Facie case of Retaliation.
>
> 2. [Defendant's] Illegitimate Retaliating Reason for Plaintiff's Termination was Pretextual.
>
> Based on the forgoing, the Court should not grant [Defendant's] Motion for Summary Judgment as to Plaintiff's claim of Retaliation and Discrimination.

(Docket Entry 21 at 32.)

Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010), aff'd in other respects, ___ U.S. ___, 131 S. Ct. 1327 (2012).

"[T]he elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Id. "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Id.[6] "'If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory [or non-retaliatory] reason for the adverse employment action.' If the employer meets that burden of production, 'the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination [or retaliation].'" Adams v. Trustees of the Univ. of N.C. - Wilmington, 640 F.3d 550, 558-59 (4th Cir. 2011) (internal citation omitted) (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)); accord Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th

---

[6] For purposes of Title VII, "protected activity" consists of "[o]pposition activity [which] encompasses . . . voicing one's opinions in order to bring attention to an employer's discriminatory activities . . . [and] [p]articipation activity [which] encompasses . . . making a charge, testifying, or participating in any manner in a Title VII investigation, proceeding, or hearing." Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir. 1999) (internal quotation marks omitted).

-7-

Cir. 2011) ("If a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for his termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." (internal quotation marks omitted)).

<u>Analysis</u>

Taken in the light most favorable to Plaintiff, the competent evidence (within the meaning of Federal Rule of Civil Procedure 56(c)) reflects the following:

1) in 2004, after prior service in other positions with Defendant, Plaintiff became General Manager of one of Defendant's stores in Salisbury (Docket Entry 17-1 at 5-7);[7]

2) Ron Cornelison thereafter became Defendant's Director of Operations with authority over the Salisbury store where Plaintiff served as General Manager (<u>id.</u> at 7-8);

3) in 2008, Director of Operations Cornelison gave Plaintiff five different written warnings regarding operations at the Salisbury store where Plaintiff served as General Manager (<u>id.</u> at 8-12; <u>see also</u> <u>id.</u> at 30-34 (copies of written warnings));

4) "after these write-ups [Plaintiff] w[as] demoted to [Assistant Manager] and transferred to [one of Defendant's stores in] Huntersville" (<u>id.</u> at 12);

---

[7] Where page numbers in a document's CM/ECF footer (created at docketing) differ from the document's original internal pagination, pin cites refer to the page number(s) in the CM/ECF footer.

-8-

5) in 2009, Director of Operations Cornelison transferred Plaintiff to another of Defendant's stores near Concord (still as an Assistant Manager) (id. at 15);

6) "in January of 2010 the position of [A]ssistant [M]anager was eliminated across [Defendant's] corporation" (id.) and Plaintiff became a "[S]hift [L]eader" (id. at 21);

7) "in January [2010] right after the [A]ssistant [M]anager position was eliminated [Plaintiff] complained to [Defendant's Human Resources Director] Kristie Scott about certain things [Plaintiff] allege[d] that [Director of Operations] Cornelison had done" (id. at 18);

8) Plaintiff's reported complaints largely involved things that had no even arguable connection to national origin, religion, or color, but also included that Director of Operations Cornelison "referr[ed] to [Plaintiff] as being 'Lebanese,'" once "start[ed] to say that a female employee spoke better English than [Plaintiff]," "call[ed] [Plaintiff] 'crack head,'" and "enter[ed] [Plaintiff's] race as African American in . . . [one of Defendant's] information management system[s]" (Docket Entry 17-2 at 4);

9) Defendant "has a program called 'Next Slice' . . . [which] identif[ies] employees who have management potential . . . [to participate in] a development program . . . [and upon] successfully complet[ing] this program . . . to move into [a] management position" (id. at 7; accord Docket Entry 17-3 at 4);

10) shortly after Plaintiff complained to Human Resources Director Scott about Director of Operations Cornelison, Plaintiff

interviewed with five Directors of Operations (including Director of Operations Cornelison) for an opportunity to enter the Next Slice Program (Docket Entry 17-2 at 7; see also Docket Entry 21 at 18 (statement in Plaintiff's summary judgment response that, "[o]n March 3, 2010, Plaintiff had his Next Slice Interview with five [Directors of Operations] in Charlotte."));

11) Human Resources Director Scott subsequently received a report that Plaintiff got frustrated with a point of discussion in the interview[8] and "directed the word, 'sharmuta' at one or more of the Directors of Operations," that "[s]harmuta is a vulgar Arabic insult, meaning 'whore' or 'bitch,'" and that "[t]wo of the Directors of Operations in the interview recognized the word and were shocked by it" (Docket Entry 17-2 at 8);

12) Human Resources Director Scott thereafter "asked each of the Directors of Operations who were in that [interview] to prepare a written statement regarding the incident [and all five, including Director of Operations Cornelison,] . . . did so and submitted the statements to [Human Resources Director Scott]" (id.; see also id. at 11-20 (copies of five written statements));

---

[8] As Human Resources Director Scott described it, Plaintiff "became upset with the stated requirement that to be accepted as a Manager Designate, a candidate must be willing to take whatever General Manager position was offered." (Docket Entry 17-2 at 7.) In his summary judgment response, Plaintiff confirmed that, during his interview for the Next Slice Program, he "got upset when [the Directors of Operations] asked him if a store became available in South Carolina and he was next up for a store that he would have to take that store or lose his chance, and that he could not choose the location." (Docket Entry 21 at 20.)

-10-

13) Human Resources Director Scott "communicated with Mike Smith, [Defendant's] Operations Vice President about the incident . . . [and they] decided that because [Plaintiff] had complained about [Director of Operations] Cornelison, [Director of Operations] Cornelison would be strictly excluded from any discussions of the action that might be taken as a result of this incident" (id. at 8; accord Docket Entry 17-3 at 6); and

14) "[Operations Vice President] Smith and [Human Resources Director Scott] reviewed [the statements from the five Directors of Operations and] . . . concluded, based on the statements [they] received, that [Plaintiff] had said 'sharmuta'" (Docket Entry 17-2 at 9; see also id. (documenting view of Operations Vice President Smith and Human Resources Director Scott that "[i]t [wa]s unreasonable to believe that five people would hear the same thing if it was not actually said . . . [and] also unreasonable to believe that five Directors of Operations would get together and create this story in order to get [Plaintiff] in trouble . . . [particularly given that Operations Vice President Smith and Human Resources Director Scott] knew of no reason for any of the [four] other Directors of Operations [besides Director of Operations Cornelison] to have any issues with [Plaintiff] . . . [and] [t]here was no reason to believe that these Directors of Operations would put their own jobs into jeopardy [by submitting false statements] to get [Plaintiff] into trouble"); Docket Entry 17-3 (sworn statement from Operations Vice President Smith that, "[w]hile the statements [from the five Directors of Operations] differed as to

some details, all were agreed that [Plaintiff] used the word sharmuta . . . [and that Operations Vice President Smith and Human Resources Director Scott] had no reason to believe that all five of these [Directors of Operations] would lie about this, so [Operations Vice President Smith and Human Resources Director Scott] accepted it as true");

15) "[a]s a result [Operations Vice President Smith and Human Resources Director Scott], in consultation with [Defendant's Senior Director of Field Human Resources] Bob Smith[,] decided to terminate [Plaintiff's] employment" (Docket Entry 17-2 at 9-10; accord Docket Entry 17-3 at 5-6; see also Docket Entry 17-1 at 26 (documenting Plaintiff's deposition testimony admitting that he had no evidence to contradict Defendant's evidence showing that Operations Vice President Smith and Human Resources Director Scott "made the decision to terminate [Plaintiff's] employment")).

Under these circumstances, even if the Court assumes that Plaintiff has made out a prima facie case of national origin discrimination and retaliation for opposing harassment based on national origin, religion, and color, Defendant (as it argued in seeking summary judgment (see Docket Entry 17 at 1; Docket Entry 18 at 13-14, 18-19)) has carried its burden of producing a non-discriminatory and non-retaliatory reason for Plaintiff's firing. See, e.g., Hoyle, 650 F.3d at 337; Adams, 640 F.3d at 558-59. As a result, to avoid summary judgment, Plaintiff must identify competent evidence sufficient to allow a reasonable fact-finder to conclude that Defendant's stated reason for Plaintiff's dismissal,

-12-

Case 1:11-cv-00831-WO-LPA   Document 37   Filed 09/17/12   Page 12 of 19

i.e., the determination by Operations Vice President Smith and Human Resources Director Scott that Plaintiff had used the word "sharmuta" during his interview for the Next Slice Program, constituted pretext for discrimination based on Plaintiff's national origin and/or for retaliation due to his opposition to harassment based on his national origin, religion, and color. See, e.g., id. Plaintiff has not done so.

First, Plaintiff's summary judgment response does not present a clearly-identified argument regarding the pretext issue; to the contrary, it consists of:

1) approximately 30 pages of largely stream-of-conscious-style narrative under the heading "Statement of Facts" (see Docket Entry 21 at 1-31);

2) a listing of four "Questions" that generally reflect the errant view that Defendant must prove that it did not discriminate or retaliate against Plaintiff (see Docket Entry 31-32);

3) a section titled "Legal Arguments" that conclusorily asserts (without any argument or citation of authority) that "Plaintiff Can Meet His Burden of Proving Discrimination [and Retaliation]," "Plaintiff Can Establish a Prima Facie Case of Discrimination [and Retaliation]," and "[Defendant's] Illegitimate Reason for Plaintiff's Termination was Pretextual" (id. at 32); and

4) a "Conclusion" section baldly proclaiming that Defendant "is not entitled to Summary Judgment as a Matter of Law," that "[m]aterial questions of fact exist that bar Summary judgment it [Defendant's] favor," that [Plaintiff] is entitled to Summary

-13-

Judgment against [Defendant] on all issues[,] . . . all claims and [all] defense[s]" (id. at 32-33).

This approach does not suffice to fend off summary judgment. See, e.g., Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993) (ruling that, although a pro se litigant receives liberal construction, "judges are not also required to construct [his] legal arguments for him"), cited with approval in Strickland v. Lee, 471 F. Supp. 2d 557, 577 n.12 (W.D.N.C. 2007), aff'd sub nom., Strickland v. Branker, 284 Fed. Appx. 57 (4th Cir. 2008); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." (internal citations and quotation marks omitted)). Further, to the extent the Court chose to dig into Plaintiff's above-referenced "Statement of Facts" in search of a hidden pretext argument, it would find that Plaintiff devoted the bulk of his attention not to addressing the decision of Operations Vice President Smith and Human Resources Director Scott (in consultation with Senior Director of Field Human Resources Smith) to fire Plaintiff, but instead Plaintiff's prior conflict with Director of Operations Cornelison, most of which itself had little, if any, apparent connection to Plaintiff's national origin (let alone his religion[9] or color). (Compare Docket Entry 21 at 1-

---

[9] For example, Plaintiff's factual narrative mentions religion only as follows: "[Director of Operations] Cornelison would also talk about Christianity, which in turn the Plaintiff would take as
(continued...)

-14-

18 (setting out matters under sub-heading "Plaintiff's Work History and Complaints"), with id. at 18-31 (setting out matters under sub-heading "Plaintiff's Termination").)

In addition, review of the "Statement of Facts" section of Plaintiff's summary judgment response reveals that Plaintiff concedes "[Human Resources Director] Scott and [Operations Vice President] Smith along with [Senior Director of Field Human Resources] Smith made the final decision to separate Plaintiff from [Defendant] based on what [sic] the five [Directors of Operations'] differentiated statements of what happened (without great detail) at the Next Slice Interview." (Id. at 17-18.) By definition, if Human Resources Director Scott and Operations Vice President Smith (in consultation with Senior Director of Field Human Resources Smith) fired Plaintiff based on what they understood happened in his interview for the Next Slice Program (i.e., that Plaintiff directed a vulgar insult at management personnel conducting the interview), they did not fire him because of his national origin or in retaliation for his opposition to harassment based on national origin, religion, and color.  Neither Plaintiff's denial that he said the word "sharmuta" (see Docket Entry 17-1 at 25, 26; Docket Entry 21 at 26) nor his arguments that Human Resources Director Scott and Operations Vice President Smith erroneously concluded (from the statements of the five Directors of Operations) that he did (see Docket Entry 21 at 21-30) alters the foregoing conclusion.

---

⁹(...continued)
[Director of Operations] Cornelison insulting Plaintiff's religion which is Islam." (Docket Entry 21 at 2.)

See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) ("[T]he uncontested evidence established that [the defendant's] decisionmaker honestly believed that [the plaintiff] deserved to be discharged for threatening [a supervisor], regardless of whether [the plaintiff] did in fact issue the threats. Thus, [the plaintiff's] evidence failed to address whether [the defendant's decisionmaker] did not honestly believe that the threats were made, and ultimately, it is the perception of the decisionmaker which is relevant. . . . In short, on the evidence in the record, no reasonable juror could conclude that [the defendant's] proffered explanation is unworthy of credence. Beyond that, [the plaintiff] has failed to put forth sufficient evidence showing that discrimination [or retaliation] was the real reason behind [the defendant's] decision." (internal citations, parentheticals, and quotation marks omitted)); Price v. Thompson, 380 F.3d 209, 214 n. 1 (4th Cir. 2004) ("[M]ere mistakes of fact are not evidence of unlawful discrimination [or retaliation].").

Stripped of such arguments, all that remains of Plaintiff's summary judgment response are scattered, unsupported declarations that the five Directors of Operations (and perhaps Human Resources Director Scott and Operations Vice President Smith) "conspired" to bring about Plaintiff's firing by falsifying the "sharmuta" charge. (See Docket Entry 21 at 13 ("[T]he five Directors of Operation [sic] conspired a plan to rid the Plaintiff from [Defendant] somehow."), 21 ("For the five [Directors of Operations] who conspired against the Plaintiff is appalling [sic]."), 25

-16-

("Plaintiff honestly knows in his heart that he was conspired against and that the five [Directors of Operations] made false accusations against him. Not only limited to the five [Directors of Operations].").) The Fourth Circuit has made clear that such contentions do not provide a basis for a finding of pretext: "Importantly, in demonstrating [that a] decision was pretext, [a plaintiff] . . . cannot rely on his own assertions of discrimination [and/or retaliation], which in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory [and non-retaliatory] reasons for an adverse employment action." Adams, 640 F.3d at 560 (internal brackets, citations, and quotation marks omitted); see also Francis, 452 F.3d at 308 ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

Finally, nothing in Plaintiff's exhibits (Docket Entry 21-1) would permit a finding of pretext in this case. As with the text in Plaintiff's summary judgment response, the bulk of Plaintiff's exhibits appear to relate to his conflict with Director of Operations Cornelison, rather than to the circumstances of Plaintiff's firing by Human Resources Director Scott and Operations Vice President Smith (in consultation with Senior Director of Field Human Resources Smith). (Compare id. at 1-46, 49, 73-74, 80-92, with id. at 47-48, 50-79.) For reasons previously discussed, the documents concerning Director of Operations Cornelison lack

-17-

relevance to the pretext issue. The documents having some connection to Plaintiff's firing consist of:

1) duplicates of documents submitted by Defendant (i.e., portions of Human Resources Director Scott's affidavit, the statements of the five Directors of Operations who participated in Plaintiff's Next Slice Program interview, and Defendant's summary judgment brief) (id. at 47, 48, 50-54, 58, 60-66, 68-70, 75, 76);

2) internet print-outs regarding the meaning of words and phrases in English and Arabic (id. at 55-57, 59, 67, 77, 78); and

3) notes made and e-mails received by Human Resources Director Scott (id. at 71-72, 79).

Review of these documents confirms that none would allow a reasonable fact-finder to conclude Defendant's stated reason for Plaintiff's dismissal constituted pretext for discrimination based on national origin and/or for retaliation due to opposition to harassment based on national origin, religion, and color.[10]

---

[10] As Defendant has observed (see Docket Entry 24 at 2-7; Docket Entry 32 at 2-5), many of Plaintiff's exhibits do not meet the standard for consideration at summary judgment. See Fed. R. Civ. P. 56(c)(4); Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991). However, given that said exhibits do not raise a material question of fact as to pretext, formally striking them appears unnecessary. See generally Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *6 (M.D.N.C. Apr. 19, 2010) (unpublished) ("Defendants [have] ma[d]e clear that [the contested materials should not affect the resolution of the underlying dispositive motion] . . . . The assigned District Judge can assess that matter directly [in reviewing the recommended ruling on the underlying dispositive motion] rather than through the prism of an order from the undersigned Magistrate Judge striking this material (and, presumably, Plaintiff's objection thereto). No purpose would be served by injecting an additional layer of order and objection into the case . . . .").

Accordingly, for all of the foregoing reasons, Defendant is entitled to summary judgment.

## Conclusion

Under the circumstances of this case, no need exists to strike exhibits submitted by Plaintiff because, even without any such action, Defendant has shown "'that there is an absence of evidence to support [Plaintiff's] case,'" Carr, 453 F.3d at 608 (quoting Celotex Corp., 477 U.S. at 325). In addition, Plaintiff's wife cannot appear on Plaintiff's behalf unless she is an attorney admitted to practice before this Court.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 17) be **GRANTED**.

**IT IS ORDERED** that Defendant's Motion to Strike (Docket Entry 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the "Notice of Appearance" purportedly filed by Jennifer Hamdan (Docket Entry 27) is **STRICKEN**.

                                              /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                     **United States Magistrate Judge**

September 17, 2012